

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-25-2008

# Gustianto v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3600

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Gustianto v. Atty Gen USA" (2008). *2008 Decisions.* Paper 790.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/790

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3600
_____

HARRY GUSTIANTO,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A96 253 302)
Immigration Judge:  Honorable Robert P. Owens

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 23, 2008
Before: SLOVITER, STAPLETON and COWEN, Circuit Judges

(filed: July 25, 2008)
_____

OPINION
_____

PER CURIAM

Harry Gustianto petitions for review of a final order of the Board of Immigration

Appeals ("BIA").  For the reasons that follow, we will deny the petition.

Gustianto, a native and citizen of Indonesia, was admitted to the United States

around May 4, 2002, as a non-immigrant visitor with authorization to remain for six months.  He applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"), arguing that he would be persecuted in Indonesia because of his Chinese ethnicity and because he would be perceived to be Catholic.[1]  Gustianto provided several examples which, he claims, constituted persecution.  He explained that when he was a boy Muslim parents did not permit their children to play with him.  In 1995, while Gustianto celebrated the Chinese New Year with relatives, native Indonesians complained about excessive noise and threw rocks through the windows of his home.  The next year, a Christmas celebration at Gustianto's house drew additional noise complaints from native Indonesians.  Although the police were called on both occasions, they blamed Gustianto and his family for creating a disturbance and required a "bribe" before allowing the celebrations to continue.  When Gustianto enrolled in college in 1997, he and other ethnic Chinese students were subjected to harsher "hazing," such as being told to do 200 push-ups.  During the riots in May 1998, Gustianto suffered a cut on his arm when native Indonesian students overturned his car.  He was taken to a hospital, where he received bandages and medication.

The Immigration Judge ("IJ") found Gustianto to be credible, but concluded that

---

[1] Gustianto testified that he is Buddhist, but that he is "learning Catholicism," the religion practiced by his wife and family.

he failed to establish a nexus between the 1998 incident and a protected ground. The IJ further found that his other experiences did not rise to the level of persecution, and that he had not satisfied the requirements for withholding of removal or for relief under the CAT. These determinations were based in part on the IJ's observation that Gustianto remained in Indonesia for four years after the last incident of alleged persecution and that his family had lived safely in Indonesia since Gustianto departed for the United States in 2002. On August 8, 2007, the Board of Immigration Appeals ("BIA") dismissed Gustianto's appeal. The BIA found that the harm suffered by Gustianto did not rise to the level of past persecution and that he failed to meet the burdens of proof on his withholding and CAT claims. Gustinato timely petitioned for review of the BIA's order.

We have jurisdiction over the petition pursuant to INA § 242(a)(1) [8 U.S.C. § 1252(a)(1)]. Because the BIA substantially relied on the IJ's determinations and also issued its own decision, this Court reviews the decisions of both the BIA and the IJ. See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007); Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We review the factual determinations in these decisions under the substantial evidence standard. See Toure v. Att'y Gen., 443 F.3d 310, 316 (3d Cir. 2006). Under that standard, the decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (quoting Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001)).

To qualify for asylum under INA § 208(b)(1) [8 U.S.C. § 1158(b)(1)], Gustianto

3

must establish that he is unable or unwilling to return to Indonesia because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A) [8 U.S.C. § 1101(a)(42)(A)]. Establishing eligibility for asylum on the basis of past persecution requires a showing of: "(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either 'unable or unwilling' to control." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (citation omitted). To establish eligibility on the basis of future persecution, an applicant must demonstrate "that [he] has a genuine fear, and that a reasonable person in [his] circumstances would fear persecution if returned to [his] native country." Id. "[I]f an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution" standard for withholding of removal. Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003). Significantly, "persecution connotes extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (quotations omitted). It "does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Id.

After thoroughly reviewing the record, we conclude that substantial evidence

4

supports the denial of relief. Gustianto's experiences – not being permitted to play with Muslim children, having to pay the police "bribes" for permission to continue with celebrations at his home after native Indonesians complained about excessive noise, the "hazing" he experienced in college, and the attack during the 1998 riots – are not severe enough, even when viewed cumulatively, to constitute persecution. See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (holding that ethnic Chinese Indonesian's "account of two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution"); Abdille, 242 F.3d at 494-95 (holding that "[m]ere generalized lawlessness and violence between diverse populations" will not support relief). Furthermore, ample evidence supports the determination that Gustianto did not establish a well-founded fear of future persecution. See Lie, 396 F.3d at 538 (finding that petitioner "failed to establish an individualized risk of persecution or that there is pattern or practice of persecution of Chinese Christians in Indonesia"). In particular, the 2005 State Department Country Report, news articles, and NGO reports submitted in support of Gustianto's application do not compel a finding different than that reached by the IJ and the BIA. Because Gustianto failed to establish a well-founded fear of future persecution, he also failed to satisfy the higher standard for withholding of removal. See Kibinda v. Att'y Gen., 477 F.3d 113, 123 (3d Cir. 2007). Gustianto's CAT claim was properly denied because the record evidence does not compel the conclusion that he is "more

5

likely than not" to be tortured if returned to Indonesia. See Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003); 8 C.F.R. § 208.16(c)(2).

Gustianto argues that his experiences are similar to those described in Matter of O-Z- & I-Z-, 22 I. & N. Dec. 23 (BIA 1998), where the successful asylum petitioners suffered repeated physical attacks (resulting, on different occasions, in stitches and surgery), received written and verbal threats, endured humiliation at school, and had their apartment robbed and vandalized. Evidence of such severe and extreme conduct is not present here. Gustianto also claims that the IJ mistakenly faulted the lack of a "direct nexus" between one of the five protected grounds and the 1998 incident where Gustianto's car was overturned. Notably, though, the BIA did not adopt the IJ's conclusion that Gustianto failed to establish persecution on account of his ethnicity or religion; rather, the Board held that Gustianto's experiences – including the 1998 attack – did not rise to the level of past persecution. As noted above, this determination is supported by substantial evidence.

Finally, Gustianto asserts that "the IJ erroneously determined that [his] . . . fear of future persecution was unreasonable" because he departed for the United States four years after the last incident of alleged persecution and because his family has remained in Indonesia without experiencing any harm. These factors, however, are clearly relevant to Gustianto's fear of future persecution. See Lie, 396 F.3d at 537 ("[W]hen family members remain in petitioner's native country without meeting harm, and there is no

6

individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished.").

For the foregoing reasons, we will deny the petition for review.